UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GARRETT LINDERMAN,

              Plaintiff,

  v.

RUBEN CEDENO, DEVON SCHRUM, KAREN BRUNSON, TAMARA ROWDEN, CAIN (FNU), SMITH (FNU), CARROLL RIDDLE, T. SCHNEIDER, McTARSNEY (FNU), PALMER (FNU), MOSELY (FNU), WINTERS (FNU), ASHTON (FNU), NESBITT (FNU), MOHN (FNU), MILLER (FNU), JANE/JOHN DOES, and L. SCHNEIDER,

              Defendants.

NO. C10-5897 RBL/KLS

**REPORT AND RECOMMENDATION**
Noted For: August 2, 2013

Before the Court is Defendants' Motion for Summary Judgment. ECF No. 70. Defendants served Plaintiff with a *Pro Se* Prisoner Dispositive Motion Notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012) and in accordance with the holding of *Rand v. Rowland,* 154 F.3d 952, 962-63 (9th Cir. 1998). ECF No. 71. Defendants' motion was originally noted for March 39, 2013. ECF No. 70. Plaintiff was granted two extensions of time within which to file his response. ECF Nos. 76 and 79. His latest motion for extension (ECF No. 80) was denied. Plaintiff's failure to timely file a response may be considered by the

REPORT AND RECOMMENDATION - 1

1  Court as an admission that the Defendants' motion has merit.  Local Rule W.D.Wash. CR
2  7(b)(2).
3      Garrett Linderman is a pro se prisoner who is currently incarcerated at the Olympic
4  Corrections Center (OCC).  He claims that he is a "jailhouse lawyer" and because of his
5  activities in assisting other inmates, he was targeted for retaliation.  Mr. Linderman alleges that
6  numerous CBCC employees and officials of the Department of Corrections (DOC) retaliated
7  against him for exercising his First Amendment rights.  The alleged retaliatory conduct
8  included improperly processing or rejecting his mail, twice placing him in segregation,
9  improperly processing or denying his grievances, and inciting other inmates to threaten him.
10  Plaintiff claims violation of his First, Fourteenth, and Eighth Amendment rights.  He also
11  asserts state claims of malicious harassment, right to petition and freedom of speech, and
12  deprivation of due process under the Washington Constitution. *Id.*, pp. 5-6.  Plaintiff seeks
13  compensatory and punitive damages, as well as declaratory and injunctive relief. *Id.*.
14      The incidents forming the basis of Mr. Linderman's complaint began in March 2007
15  when he arrived at the Clallam Bay Corrections Center (CBCC) and continued into April of
16  2008.  Having reviewed Defendants' motion, supporting declarations, and balance of the
17  record, the Court recommends that Defendants' motion for summary judgment (ECF No. 70)
18  be granted.

**FACTS**

**A.    Plaintiff's Allegations**

Mr. Linderman filed his verified complaint in this matter on December 1, 2010.  ECF
No. 5, p. 26.  He alleges that in June and July of 2007, his mail was improperly rejected and/or

REPORT AND RECOMMENDATION - 2

confiscated, including confiscation of a $20.00 money order sent to him by his girlfriend.  ECF No. 5, pp. 10-11.

Mr. Linderman alleges that in July 2007, Defendant McTarsney delayed the filing and investigation of Mr. Linderman's grievance against Defendants Miller and Mohn and that in late July 2007, Defendants Miller and Mohn retaliated against him by instigating other inmates to physically threaten him.  ECF No. 5, pp. 11-12.  Mr. Linderman alleges that in July and August 2007, he was attacked by other prisoners who told him the attack was for "trying to file grievances on them," and that Defendant McTarsney threatened him about making further allegations against the staff.  ECF No. 5, p. 12.

Mr. Linderman alleges that in the second week of August 2007, after he wrote letters to his mother and girlfriend complaining about CBCC staff retaliation, 27 pieces of his incoming and outgoing mail were intentionally intercepted and delayed.  Mr. Linderman acknowledges that there were a number of postal delays due to bad weather, but claims that the delays to his mail were not caused by postal service delays.  He further alleges that Defendants Brunsen, Cedeno, Rowden, Riddle, McTarsney, Schneider and others failed to investigate the "illegal obstruction" of his mail after he filed grievances.  ECF No. 5, pp. 13-14.

Mr. Linderman alleges that on August 13, 2007, November 27, 2007, and December 5, 2007, he received mail rejections on three outgoing pieces of mail and that the notices were in violation of DOC policy.  ECF No. 5, pp. 14-15.

Mr. Linderman alleges that on November 28, 2007, Defendants T. Schneider and others threatened him with retaliatory segregation because he continued to complain about his mail and comments about filing a lawsuit.  ECF No. 5, p. 17.  Mr. Linderman alleges that on

1  December 5, 2007, he filed a grievance against T. Schneider, but Defendant McTarsney

2  improperly delayed and then denied his grievance. *Id.*, pp. 17-18.

3        Mr. Linderman alleges that on January 9, 2008, Defendants retaliated against him by

4  placing him in administrative segregation (Ad Seg) based on false allegations.  As a result, he

5  states he spent four months in segregation, lost his job, was removed from college, denied all

6  contact visits and visits with non-family members, his liver treatment was cancelled, and he

7  was subjected to tighter security than normal while he was segregated.  ECF No. 5, pp. 18-19.

8  He further claims that Defendants "coerced" him into withdrawing his grievances so that he

9  could receive the previously denied benefits and then transferred him to a minimum security

10 unit close to his mother which he had requested.  However, when he arrived at his new facility,

11 he was immediately placed in segregation because someone from CBCC entered false

12 information that he had assaulted a staff member.  ECF No. 5, p. 20.

**B.**     **Undisputed Facts Presented by Defendants**

      Defendants provide the following facts, which are not disputed by Mr. Linderman.

      Defendant Tracy Schneider's duties include supervising and working at both the property room and mailroom at CBCC.  Sgt. Schneider is familiar with DOC policies and CBCC operational memoranda concerning inmate property and inmate mail.  Sgt. Schneider supervises three of the other Defendants in this case who worked in the CBCC mailroom, Diane Winters, Karin Ashton, and Lizeth Nesbitt.   ECF No. 70-1, Exhibit 1, Declaration of Tracy Schneider, p. 2, ¶ 1.

      As part of their duties, mailroom staff routinely read incoming and outgoing offender mail, other than legal mail, to ensure that such mail does not violate DOC policy

REPORT AND RECOMMENDATION - 4

or create security and safety concerns for staff, inmates, and the public.  Inmate Garrett Linderman's mail was subject to being read by mailroom staff and much of it was read.  Whenever staff determine that inmate mail violates DOC policy, a mail restriction notice is provided to the inmate advising him/her of the reasons for the restriction, the right to appeal the restriction to the prison superintendent, and the right to appeal the superintendent's decision to a designated person at DOC headquarters.  *Id.*, pp. 2-3, ¶¶ 2.3.

Mr. Linderman was issued a number of mail restrictions relating to his incoming and outgoing mail during his time at CBCC.  On August 17, 2007, Ms. Winters issued Mr. Linderman Mail Restriction Notice No. 0807093 for outgoing mail addressed to Leeann Evans which was rejected for "attempting to send out two altered envelopes."  ECF No. 70-1, Exhibit 1, Schneider Decl., Attachment A, p. 6.

On November 21, 2007, Ms. Nesbitt issued Mr. Linderman Mail Restriction Notice No. 1107228, for outgoing mail addressed to the Heasler Family which was rejected for "attempting to mail out homemade card not thru proper channels (recreation)."  ECF No. 70-1, Exhibit 1, Schneider Decl., Attachment B, p. 8.

On December 3, 2007 Ms. Ashton issued Mr. Linderman Mail Restriction Notice No. 1207016 for outgoing mail addressed to Leeann Evans which was rejected for "correspondence contains threatening, derogatory comments directed to females."  Mr. Linderman stated in his outgoing letter "I just sent a notice of litigation to the Bitch running the Mailroom, if our mail is fucked with again she will regret it."  Sgt. Schneider counseled Mr. Linderman concerning this mail in the presence of several other CBCC staff members but did not infract Mr.

1  Linderman even though she felt his statements were threatening and inappropriate.  ECF No.
2  70-1, Exhibit 1, Schneider Decl., p. 3, ¶ 3; Attachments A-C.
3       According to Ms. Schneider, all the mail restriction notices issued to Mr. Linderman at
4  CBCC were legitimate and appropriate and that none of the mail restrictions issued to Mr.
5  Linderman were issued because of any litigation or grievances he may have filed while he was
6
7  at CBCC or before he arrived at CBCC. ECF No. 70-1, Exhibit 1, Schneider Decl., p. 3, ¶ 4.
8  There were also several times in the winter of 2007-2008 that mail was delayed due to bad
9  weather.  Mr. Linderman's mail was treated like all other inmates' mail and his mail was not
10 singled out and delayed any longer than other inmates' mail.  *Id.* at ¶ 5.
11      Sgt. Schneider states that she did not retaliate against Mr. Linderman or harass him in
12 any way and to the best of her knowledge neither did anyone else in the CBCC mailroom,
13
14 including Defendants Winters, Ashton, and Nesbitt. ECF No. 70-1, Exhibit 1, Schneider Decl.,
15 p. 4, ¶ 6.
16      Defendant Lester Schneider was an investigator at CBCC from 2002 to 2008.  In
17 January 2008 the CBCC Intelligence and Investigation (I&I) office received information
18 that Mr. Linderman might be involved in security threat group (STG) activities, including
19
20 strong-arming and pressuring other inmates.  STGs are more commonly known as gangs.
21 Mr. Linderman is a long-time member of a white supremacist STG and was considered by
22 DOC to be fairly influential in his STG.  Around this same time CBCC I&I was asked to
23 investigate the possible compromise of a staff member by Mr. Linderman.  Mr. Linderman was
24
25
26

placed in Ad Seg on January 9, 2008 pending completion of the investigations by the CBCC I&I office. ECF No. 70-1, Exhibit 2, Declaration of Lester Schneider, pp. 12-13, ¶¶ 1-3[1].

I&I completed its investigation in early February 2008 (for STG activities) and in late March 2008 (for compromising staff). The I&I investigations did not produce sufficient evidence to charge Mr. Linderman with a serious prison infraction for STG activities but it did produce evidence that Mr. Linderman presented a potential compromise of a CBCC employee. It was therefore recommended that Mr. Linderman be transferred to the Stafford Creek Corrections Center (SCCC). SCCC was chosen, in part, because Mr. Linderman had previously requested a transfer there so that he could more easily visit with his mother. Mr. Linderman was transferred to SCCC on April 2, 2008. ECF No. 70-1, Exhibit 2, Schneider Decl., ¶ 3; Attachment A, pp. 15-16 (Administrative Segregation/IMS Referral).

According to Lester Schneider, the CBCC investigations of Mr. Linderman were initiated only because information received by CBCC I&I indicating possible inappropriate conduct by Mr. Linderman. The investigations were not prompted by any grievances or litigation that Mr. Linderman may have filed or for any other improper purpose. ECF No. 70-1, Exhibit 2, Schneider Decl., ¶ 4.

**SUMMARY JUDGMENT STANDARD**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,*

---

[1] The signature page for Mr. Schneider's Declaration is filed at ECF No. 72, p. 1.

1   263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not
2   introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply
3   point out the absence of evidence to support the nonmoving party's case.  *Fairbank v.*
4   *Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to
5   comply with local rules in opposing a motion for summary judgment does not relieve the
6   moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law.
7   *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001).  This is true even when a party appears *pro se*.  *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

## DISCUSSION

A.   **Statute of Limitations**

Mr. Linderman signed his complaint in this matter on December 1, 2010.   Thus, Defendants argue that the majority of Mr. Linderman's claims are barred by the statute of limitations for § 1983 actions in the State of Washington.

When a plaintiff files a 42 U.S.C. § 1983 lawsuit, the applicable Washington statute of limitations must be applied, as 42 U.S.C. § 1983 does not contain a statute of limitations. *Rose v. Rinaldi*, 654 F.2d 546 (9th Cir. 1981); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758 (9th Cir. 1991).  Washington imposes a three year statute of limitations for "injury to the person or rights of another not hereinafter enumerated."  RCW 4.16.080(2).  This includes 42 U.S.C. § 1983 actions.  *Rose*, 654 F.2d 546; *Bagley*, 923 F.2d 758.  The statute of limitations for a federal claim begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Trotter v. International Longshoremen's & Warehousemen's Union*, 704 F.2d 1141, 1143 (9th Cir. 1986).  Federal courts apply Rule 3 to determine when an action is commenced for tolling purposes. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir.

2002). An action is commenced when the complaint is filed with a district court. Fed. R. Civ. P. 3.

Mr. Linderman's action was commenced on December 1, 2010, when he signed and submitted his complaint for filing. Thus, claims accruing prior to December 1, 2007 are barred by the three-year statute of limitations, including those claims relating to: (1) March 2007 placement in Ad Seg; (2) June, July, and August 2007 mail delays, restrictions, and rejections; (3) July 2007 conduct of Defendants Miller and Mohn; and (4) November 28, 2007 incident with Defendant Tracy Schneider.

The only claims that are clearly not barred by the statute of limitations are Mr. Linderman's claims relating to: (1) December 3, 2007 Mail Restriction No. 1207016; (2) December 5, 2007 grievance denied by Defendant McTarsney; and (3) placement in Ad Seg in January 2008.

Accordingly, the undersigned recommends that all claims accruing prior to December 1, 2007 be dismissed as untimely because Mr. Linderman knew or had reason to know of the injuries forming the basis of his claims. Mr. Linderman alleges no facts and has offered no evidence to the contrary nor is there any evidence from which it may be inferred that tolling of the statute is appropriate in this case.

**B.    December 3, 2007 Mail Restriction**

Prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995) (per curiam). A prison may adopt regulations that infringe on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64

REPORT AND RECOMMENDATION - 10

(1987). Restrictions on incoming mail are given closer scrutiny than those on outgoing mail, as internal mail has an obvious effect on the internal environment of a prison, while outgoing mail poses less threat to prison security. *Thornburgh v. Abbott*, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

On December 3, 2007 Ms. Ashton issued Mr. Linderman Mail Restriction Notice No. 1207016. The notice states that the mail was rejected because "correspondence contains threatening, derogatory comments directed to females." ECF No. 70-1, Exhibit 1, Schneider Decl., Attachment C, p. 10. According to Ms. Schneider, Mr. Linderman stated in his outgoing letter "I just sent a notice of litigation to the Bitch running the Mailroom, if our mail is fucked with again she will regret it." Sgt. Schneider counseled Mr. Linderman concerning this mail but did not issue an infraction against Mr. Linderman. ECF No. 70-1, Exhibit 1, Schneider Decl., p. 3, ¶ 3; Attachment C. The mail restriction notice advised Mr. Linderman of the reasons for the restriction, the right to appeal the restriction to the prison superintendent, and the right to appeal the superintendent's decision to a designated person at DOC headquarters. *Id.*, Attachment C.

Mr. Linderman does not dispute the foregoing facts and presents no evidence to the contrary. In his complaint, he merely alleges that "no adequate reason was given for the third confiscation of [his] mail" and that Defendant Brunson ignored a timely appeal of this confiscation. ECF No. 5, p. 15.

Prison officials have a legitimate penological interest in inspecting an inmate's outgoing mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir.1995). Regulation of both incoming and outgoing mail is justified to prevent criminal activity and to maintain prison

security. *O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir.1996). Prison officials may justifiably censor out-going mail containing information about proposed criminal activity and may also visually inspect out-going mail to determine whether it contains contraband material which threatens prison security or material threatening the safety of the recipient. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974); *Witherow*, 52 F.3d at 266.

Defendants have produced evidence that the mailroom inspected Mr. Linderman's letter and rejected it because it contained threatening language directed to the prison official "running the mailroom." Prison officials have an obvious security issue in preventing inmates from sending out letters threatening the safety of prison staff.

Mr. Linderman has provided no evidence to the contrary and has failed to raise a question of material fact as to his claim that the handling of his December 3, 2007 outgoing mail violated his constitutional rights. Accordingly, Defendants are entitled to summary judgment on this claim.

**C.     Grievance Process**

Mr. Linderman alleges that on December 5, 2007, he filed a grievance against T. Schneider, but that Defendant McTarsney improperly delayed and then denied his grievance. *Id.*, pp. 17-18.

There is no constitutional right to a prison grievance system. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Stewart v. Block*, 938 F. Supp. 582 (C.D. Cal. 1996); *Hoover v. Watson*, 886 F. Supp. 410 (D. Del. 1995) (*aff'd*, 74 F.3d 1226). Moreover, if the state elects to provide a grievance mechanism, violations of its procedures do not give rise to § 1983 claims. *Hoover v. Watson, supra; Brown*

*v. Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D. Wash. 1997).

Therefore, Mr. Linderman's claims against Defendants for improperly processing and/or denying his grievances are without merit and should be dismissed. To the extent Mr. Linderman claims that such improper processing or denials were retaliatory, that claim is discussed below.

**D.     Retaliation**

Mr. Linderman alleges that Defendants conspired to retaliate against him for being a jailhouse lawyer and exercising his right to file litigation and grievances.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir.2012). Violations of this right are actionable under 42 U.S.C. § 1983. To prevail on a First Amendment retaliation claim, a prisoner must prove that: (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took adverse action; (3) the adverse action was causally related to the protected conduct; (4) the adverse action had a chilling effect on the prisoner's First Amendment activities; and (5) the adverse action did not advance a legitimate correctional interest. *Watison*, 668 F.3d at 1114–15.

With regard to the first element, filing prison grievances and lawsuits is clearly protected conduct. However, there is no evidence that Defendants took any adverse action against Mr. Linderman or that Mr. Linderman's protective activities were "the 'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir.2009) (quotation and citation omitted). At the summary judgment stage, a plaintiff

1  "need only put forth evidence of retaliatory motive, that, taken in the light most favorable to
2  him, presents a genuine issue of material fact as to [the defendant's] intent." *Id*. (quotation and
3  citation omitted). "[T]iming can properly be considered as circumstantial evidence of
4  retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir.1995); *see also Watison*, 668
5
6  F.3d at 1114 (explaining that the "allegation of a chronology of events from which retaliation
7  can be inferred is sufficient to survive dismissal").
8    Mr. Linderman presents no evidence of retaliatory motive, that, taken in the light most
9  favorable to him, presents a genuine issue of material fact as to the Defendants' intent.
10  Defendants deny any such motivation underlying their actions and decisions and Mr.
11  Linderman has presented no competent evidence to the contrary. Absent also is proof that
12  Defendants' alleged conduct would child or silence a person of ordinary firmness from future
13
14  First Amendment activities such as discouraging the filing of future grievances. *Brodheim*,
15  584 F.3d at 1271 (quotation and citation omitted). Mr. Linderman has not alleged or
16  presented evidence demonstrating that Defendants' alleged actions did not reasonably advance
17  a legitimate correctional goal. *Id.,* 584 F.3d at 1271–72; *Watison,* 668 F.3d at 1115 (a
18  defendant's actions are unrelated to a legitimate correctional goal when they are either
19  "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution.")
20
21   When viewed in the light most favorable to Mr. Linderman, the evidence suggests that
22  neither the handling of Mr. Linderman's mail and grievances nor his placement in
23  administrative segregation pending completion of the CBCC I&I investigation were retaliatory
24  in nature and not reasonably related to legitimate correctional coals. Accordingly, Defendants
25  motion for summary judgment on Plaintiff's retaliation claim should be granted.
26

**E. Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

As the Court has concluded that Mr. Linderman has failed to raise material issues of fact relating to his constitutional claims, it is not necessary to address the question of qualified immunity.

**CONCLUSION**

Based on the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 70) be **GRANTED;** and that Plaintiff's claims against Defendants be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

//

1    Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

2 matter for consideration on **August 2, 2013**, as noted in the caption.

3

4    **DATED** this  10th  day of July, 2013.

5

6                                                          Karen L. Strombom
                                                           United States Magistrate Judge
7